Tinnus Enterprises, LLC v. Telebrands Corporation Well, due to popular acclaim, we have the return of the same cast. Yes, indeed. This is also Tinnus v. Telebrands, 2017-2194. So, we'll hear from Mr. Hunter Hill again. To the extent that the issues are the same, we needn't repeat them, but of course there are new issues on this appeal. Indeed. The first issue, Your Honor, is venue. Our position is that venue is a threshold issue, that the court does not have discretion to issue a preliminary injunction and say, we'll decide venue later. At this point, we still do not have a venue decision. We are still doing discovery. When are we going to get that venue decision? That's a very good question, Your Honor. The way it's looking now, there will be seven depositions that the plaintiffs are taking the end of this month. There will then be a briefing, I think in February, to the magistrate judge. I do not know what the magistrate judge's schedule is for issuing a decision. There will almost certainly be objections to the district court judge, whichever side wins or loses. If I had to ballpark it, I would say we're six months down the road from it, which will put us well past a year of when we filed our venue motion. We think that this is a slam dunk on venue. If I understand it correctly, the district court issued a preliminary injunction opinion, then T.C. Hartland came out, then you filed your motion to dismiss for lack of venue in light of T.C. Hartland. Is that right? It's a little more complicated than that. You filed an initial venue motion, which then got dismissed without prejudice because of the amended complaint. Correct. And then the preliminary injunction opinion came out, and then T.C. Hartland came out, and then you filed the renewed motion to dismiss for lack of venue in the context of the amended complaint, but also in light of T.C. Hartland. Yes, Your Honor, and we also asked that the court delay determining the preliminary injunction until after it had decided venue as well. But the opinion had come out already. I beg your pardon? The opinion had already come out, Your Honor. Yes, that's correct. Things were happening extremely fast, by the way. Just to be clear, the new motion to dismiss on venue was filed on 5-26. That was four days after T.C. Hartland. The contingent motion on the motion to dismiss saying, hey, if T.C. Hartland comes down in our favor, we believe we're out of here, was filed on April 25, 2017. So, I mean, we were not letting any grass grow with respect to our filings. The court did find that our motion was moot in light of a revised complaint. That complaint, however, had nothing to do with venue issues. It was a replete, you know, substantively, but did not affect any venue issues that were before the court. You're not suggesting that district court erred as a matter of law in dismissing your motion at that point in time? We did not object to it, Your Honor. We try to be reasonable as to what we object to and what we go forward. I will say I did not understand the rationale of dismissing that portion of the complaint on venue grounds. I'm just trying to figure out what case law should I be looking at to drive my view that the district court should have vacated its preliminary injunction opinion in the face of your subsequent motion to dismiss in light of T.C. Hartland. I don't think that it required vacation of the opinion. What we were seeking was not vacation, but rather a consideration on the venue issue before the preliminary injunction was actually issued. We do believe that that's a gating or threshold issue that, you know, does need to be resolved. Now the court has reopened discovery, and the issue that discovery was reopened on was a finding by the court that discovery is incomplete because Telebrands has not produced all relevant discovery related to its placement of products in retail stores, including the engagement of agents for product placement purposes. And so where this apparently is going, and part of our, you know, discovery was certainly guided by the Judge Gilstrap opinion that this court subsequently reversed with respect to regular and established place of business. The theory that we now seem to be dealing with is one that, to the extent that Telebrands may talk to retailers like Kroger's and Walmart or Walgreens and talk about store placement where, you know, we want the top shelf or the bottom shelf or the end cap or whatever it is, that that might be a regular and established place of business in Texas. So my point, Your Honor, is that discovery has been searching and does not seem to be anywhere close to an end. We, therefore, would ask that the court would address the venue issue as a threshold issue. With respect to non-infringement of the patents, the Easy Einstein product is truly different than the Battle Balloons product. It has a plug. It has a valve that does the work of holding the plug onto the tube. That's completely unlike any other product in the market. And it is also that valve which closes and seals when the plug is dislodged from the tube. Now, the question that we are asked is, for an elastic fastener, is it has to clamp a respective one of the plurality of containers to a respective tube, and it has to automatically seal it upon detachment of the container from its respective tube. In deciding those issues against us, the district court credited some experiments that were done by an expert on the other side that, in the district court's words, showed that balloons sometimes fell off the plug if you remove the outer PVC cap, which is the focus of the infringement argument here. And that uncapped balloons frequently leak out water at a faster rate than the balloons with caps. And there's good pictures of this. I refer the court to Appendix 16, which is the court's opinion, and it's citing the appendix of 1992 to 1997, which is the declaration of the expert on the other side. The problem with this, it doesn't matter that the PVC cap on the outside of the plug may contribute to less leakage. Of course it does. I mean, it's there to hold the plug in place. It keeps the plug relative to the balloon neck so that it doesn't move up or down. It moves up or down because the PVC cap isn't on there. It doesn't always not work, but sometimes it doesn't work. That's why the PVC cap is there. That does not mean that the PVC cap, which is holding the plug and the valve in place, is either clamping nor automatically sealing upon detachment. And I think a simple analogy, Your Honor, would be, what if there were glue around the circumference of the plug? And the glue, hypothetically, were necessary to hold it in place in the neck. And if you take out the glue, it's going to turn sideways and it's going to leak and it's not going to work. Where's the leakage occurring? I mean, based on this glue analogy, it sounds like you're suggesting that the leakage of the water from the water balloon is going around the circumference of the inner plug rather than through the valve in the middle of the plug. That's exactly correct, Your Honor. And in fact, that's what the experiments show. Well, that's what I'm trying to find out. Where is it clear that the leakage is going on around the circumference of the inner plug as opposed through the hole in the middle of the plug? It's at Appendix 1992 to 1997, and it's really there. He says that the water sprayed out between the neck of the balloon and the plug. That's what the expert said. Now, the other... And so that goes to the automatically sealing upon detachment. And the other side would like to ignore the words upon detachment. The claim doesn't just say automatically seal. So there's no leakage going on through the inner hole? Like when you don't have the cap, the hole maybe doesn't really close up that well. But when you have the inner cap or the outer cap, which sort of constricts around the neck of the balloon right below the inner plug, it sort of tugs on and lowers the plug in such a way that it closes up the hole in a way that it wouldn't without the outer plug? There is absolutely no evidence to that in the record. And I am not aware of any experiment that has ever shown what you just said. The bottom line, what we have is a situation where there's an outer plug present on the EZ Einstein balloon. You're not having the leakage or at least the same kind of leakage that you do when you don't have the outer plug, the outer cap. Yeah, exactly. I was going to correct that. That's correct. And that's because it holds the plug in a perpendicular direction to the neck of the balloon. But that does not make it an elastic fastener that automatically seals upon detachment. It's not doing anything different after detachment than it was doing before detachment. It's holding it perpendicular. And that is not enough under the claims to meet that claim limitation. Now, the other claim limitation I'm just going to cover very fast is clamping. What the court found was that there was a clamping force. It reached that conclusion based on the expert testimony that it was harder to pull the plugs off of the tube if they had a PVC cap on them than if they didn't. And again, Your Honor, I think that is an incorrect interpretation. The patent does not talk about a clamping force. It says it has to clamp. Clamp means you have to hold it. So envision a situation where you had a very weak rubber band. So you stick it on the tube and it slides off. You stick it on again, it slides off again. Well, it doesn't work. It's not clamping. It's applying some compressive force, but it's not clamping. The patent, the 749 patent, column 2, 49 through 50, states that a plurality of containers 18 may be clamped. For example, attached, fastened, held, clenched, secured, et cetera. Every one of those words is the concept of you've got to hold it fixed. And there is absolutely no evidence that the PVC cap accomplishes that. At best ‑‑ Your time is running down, but Judge Rainer has a question. Certainly. Counsel, let's go back to the venue issue, and I just want to make sure that I understand your argument correctly. There has been no venue decision yet. Correct. So we're not reviewing the judgment of the court with respect to venue. That is correct. Your argument is that legally the court must determine or resolve venue issues before it issues a preliminary injunction, or is it that they need to do that before they proceed and go on continuing towards the merits part of the case? The former. We believe there ‑‑ There are a lot of cases where people do trials, and it goes up, and it was the wrong venue, and you wipe it out. There's one indication out of the Ninth Circuit case, which we cite in our brief, where the Ninth Circuit said that it was a preliminary issue that the court should have reached. There it was no harm, no foul, because the Ninth Circuit went on to find that, yes, venue was proper. That is the case law we have. As you can imagine, this does not come up very often. But if the court doesn't have venue, then it shouldn't be deciding substantive issues. Why? Because it has no jurisdiction? Well, jurisdiction and venue are two different concepts, but yes. I'm trying to get your view on that difference. It is a difference, but for this purpose, I don't think it makes a bit of difference. And I would refer, you know, the court, the Illinois Central case Supreme Court, venue is not a mere nicety. It's a vital protection that defendants are entitled to rely on. Unless the defendant has consented to be sued in that district, he has a right to invoke the protection which Congress has afforded them. And we respectfully are invoking that right. Okay. Thank you. Sure. I'm just about out of time. May I, although it's unclear to me, is this my ‑‑ do I have any rebuttal time left, or is this it? Well, this includes your rebuttal time, but make a brief statement, and we'll give you two minutes for rebuttal. I think, so finish in 10 seconds, and then I have two minutes for rebuttal. Okay. On obviousness, Your Honor, I barely got into it before. The addition now is we do have a PTAB. I realize that there is, you know, I'm not saying the PTAB is the be all and end all, but the fact that the PTAB found that it was more likely than not invalid is awfully close to the same standard for vulnerability in a PI context. And we certainly believe that the PTAB should be taken into effect, particularly here where Dr. Kudrowicz has made a series of admissions which are in our brief, which I think are extremely damning for plaintiff's position with respect to invalidity. And on rebuttal, if it's addressed, I'll be happy to go through those admissions. Thank you, Your Honor. We'll give you two minutes for rebuttal. Thank you. First we'll hear from Mr. Dunlap. Good morning again, Your Honors. We're back with the third preliminary injunction case, and this is, I think, a case of serial infringement, but they've now taken the additional step of adding this plastic spacer that was much talked about, which I'll address in a second. First, with respect to venue, our position is that, as this court said in Moore v. Standard Register, if the district court didn't make a decision on it, it's not in the record, they can't appeal it. There's no decision of law for you to appeal. And in this case, the district court presently, as Mr. Underhill rightly pointed out. But their argument is not that. Their argument is that the court does not have the authority to enter into a preliminary injunction unless there's an outstanding venue issue. But I don't know where that authority comes from, Your Honor, because it has jurisdiction, and venue is separate from jurisdiction. Every case that they've cited, they cited a case about an executor, they cited a case about, what was Milberg? That was a case about a class action. They cited a case about a malicious prosecution. Let's start just in terms of judicial efficiency. Absolutely, Your Honor. Do you think that a district court should leave a venue issue open until after a jury verdict? I don't think they should leave it open until after a jury verdict. I would agree that that's. On a sliding scale, then you're going to move it back towards the beginning of the case. But I don't think, so I think the key to venue, Your Honor, is venue is a privilege, and if they didn't object to venue at the outset, it's waivable. So there's an argument. They didn't have a basis to object, right? Correct. But what changed, though? It changed after the preliminary injunction issue, and Right, so then they followed their motion. Correct, Your Honor. And now it's before the judge, and we don't have the answer to that. We don't know what's going to happen there. That's right, Your Honor, and the reason Don't interrupt. Oh, sorry, Your Honor. We don't know what's going to happen there, and we also don't know when the judge is going to decide this. It seems to me that there's some sort of argument, reasonableness to the fact that whether a preliminary injunction should ensue and remain in place if the venue is going to change. So, Your Honor, a couple things. First, the reason we don't have a decision, and the court was prepared to make a decision, but it was discovered, as Mr. Underhill pointed out, he was very honest about it, that Telebrands, the court found Telebrands misstated some facts during the initial venue discovery. So the court reopened venue discovery in November. So why we're here is it's Telebrands who's caused this. I mean, that's what the court said. So that's the first issue. The second issue, we do sort of know when a venue decision will come out because the parties have agreed on a briefing schedule that I believe begins at the beginning of February and subsequent oral arguments. So there is a reasonable estimation that it's going to come out well before trial and well before much else happens in this case. But I think the key point here is that the district court hasn't had a chance to make a decision on venue because they've just raised it. And part of the reason it's taken so long is Telebrands' own actions that caused the court to reopen the whole issue. Had they not had to reopen it, we would be sitting here with a venue decision. So you're saying we can deal with an issue of jurisdiction that was not raised or decided below, but not necessarily a venue? I think that's right, Your Honor. I think there's plenty of cases to say that the issue of jurisdiction makes a case potentially void ab initio, but with venue, venue is waivable. It's a privilege. It's a privilege of the plaintiff. And I understand that this case came out in the middle, but there's still no facts before this court. There's no question of law before this court with respect to a district court's factual decision on venue. What about the separate issue of infringement here? Different product. Absolutely, Your Honor. With respect to infringement, their argument is that this plastic spacer has somehow changed the entire invention. That somehow this makes it not infringing anymore of the 282 and 749 patents. And I kind of thought about this last night, and I thought about a piston. You hadn't thought about it before? I thought about it before, and I just thought, well, what other examples are there of this? There are millions of examples. Obviously, I've been thinking about it for three years now, I think, something like that. But what other examples of this are there in the world? And a piston is a good example. You have a piston, and you have a cylinder, and you've got a gasket, and we all have cars. And if you're a car, unless you have a Tesla, then maybe you don't have a piston and a cylinder. But the piston doesn't work. The piston and cylinder combination doesn't work without that gasket. And while sealing is happening because of that gasket, it's micrometers of sealing. You can't get around infringement by saying, well, I'm going to take that gasket and make another smaller gasket inside of that, and all of a sudden my gasket doesn't infringe. It's the same thing that this court looked at in SunTiger. SunTiger is a great case. It was the blue blocker case with the sunglasses where this court looked at, like, one little dot on the bottom of the blue blocker lens. And blue blocker had applied the shade across the thing. And they said, well, yeah, OK, maybe it infringes, but it's only 1%. It's only this little dot that's infringing. So we don't really infringe. And this court said, no, as long as you infringe, as long as the product infringes on the patent, it's infringing. A little infringement is enough. And I don't even think we have a little infringement here. So what Mr. Underhill said is that there's no evidence that it provides any sealing function or any clamping function. And I would disagree that there's a lot of evidence. And the court chose to believe, having seen both experts in person, having seen Dr. Kudrowitz and Dr. Cameron in person, and having seen videos from both of them, the court chose to say, well, Dr. Kudrowitz's tests resonated more. And that's certainly within the court's discretion. I'll also say that Dr. Cameron's only argument with respect to clamping was a theoretical one. Dr. Kudrowitz actually conducted tests with force gauges. He provided a video of himself conducting the tests. Dr. Cameron made a theoretical argument about hoop stress, which to me is an opposite. It has really nothing to do with what the spacer does, which is really nothing. Yes, does it perform sealing? Yes. But I heard Mr. Underhill say earlier, and so in our view, it has an outer elastic ring. It's sealing the balloon upon detachment. And the outer elastic ring is clamping, providing a clamping force, as demonstrated by Dr. Kudrowitz's force gauge tests. And I heard Mr. Underhill say that clamp doesn't mean that there's a clamping force. To me, if it's clamped, there's a clamping force clamping it on there. And that's what Dr. Kudrowitz measured, which their expert didn't measure at all. So there's only one piece of evidence at all anywhere in the entire case about whether or not it was clamped. And that came from us. And the Court chose in its discretion to believe that. So, Your Honors, we feel again that this is the third time that twice today, so fairly efficient there, but the third time that we've been before this Court on the appeal of a preliminary injunction. The last time we were here was 10, 15 minutes ago. But in that case, the Court found that we would likely succeed on the merits, and they hadn't presented a substantial question of validity. And they found the same thing here. And we expect, fully expect, ultimately at a jury trial, whether that's in the Eastern District of Texas or somewhere else, to prevail on this. Can you just briefly explain why we don't have a venue decision yet? I would have thought it wouldn't have taken this long. Absolutely. Because the – so the – initially there was venue discovery, Your Honor, at the beginning of the case when they first raised this motion, this motion to transfer. And so the Court said, all right, I'm going to grant plaintiffs some leave to take some venue discovery. During the course of that discovery, we concluded it and amended our complaint, and we discovered during the course of that discovery that Telebrands hadn't disclosed everything they were supposed to disclose. That's the finding the Court made at hearing on this motion. And so the Court said, I'm going to – What was the date of that? It reopened discovery on November 28, 2017. So there should have been a decision that day, which is before this day. But literally, the judge said in his opinion, because Telebrands didn't disclose everything in their discovery process, I'm going to reopen discovery. And so we have seven more depositions to take and a whole bunch more people that are involved in the venue inquiry that we still have to look into. And it's not plaintiff who has delayed this venue decision. It's defendant. So they shouldn't get to say, well, we purposely didn't disclose stuff. Or maybe they didn't do it purposely, but they didn't disclose stuff. They shouldn't get to reap the benefit of their error or of their mistake. And you have pending sanctions motions against Telebrands for their non-infringement theories? We do. The products do look different. I mean, I don't know. Well, not in this case, Your Honor. Yeah, we don't have any in this case. That's in Tinnis 2. And that's to make the jury verdict the case extraordinary. I believe we don't have any pending sanctions motions in the Tinnis 4 case. But yeah, we don't, Your Honor. So that's the other matter. So in conclusion, Your Honors, and again, I don't need to burn your time because it's their appeal, and maybe there's points for not using all of your time. But we would ask that this Court find that the district court did not abuse its discretion, affirm its ruling, and we'd ask for our costs. Thank you, Your Honor. Mr. Dunlap, Mr. Rondahill has two minutes. Two quick points. I just want to make sure the Court understands what's going on on venue. We had hundreds of document requests. Not exaggeration, hundreds. And we produced lots of documents. What the Court found that we should have produced were documents that relate to relationships between telebrands and retailers about where telebrands' product is displayed. Specifically, I believe there is going to be some evidence that there sometimes are discounts granted for temporary store placement in favorable positions. That's what telebrands did not produce in the earlier discovery. Now we have. We were going as broad as we possibly could because we were operating under the Judge Gilstrap opinion, which did seem very, very broad for what might be relevant. The Vennia opinion? I'm sorry? Yes, the Inouye Cray decision. So we thought we were going extremely broad, but apparently we didn't go broad enough because we didn't produce these documents that relate to conversations we have with retailers about store placement. It did not occur to us, Your Honor, that that is in any way relevant to whether or not we have a regular established place of business. The Court has found otherwise. We've produced that we're going to do seven depositions this month on that theory. But this is the situation we're in right now. Do you think store placement will affect Vennia? I don't think it has a thing in the world to do with Vennia. Is that what the plaintiffs are saying? That's what the plaintiffs are saying, yes. That because we talk to them about, hey, we'll give you a discount if you stick us on the end cap for two weeks, well, we must have a regular established place of business in Walmart. I mean, that appears to be the theory, as I understand it. With respect to the scientific evidence, we're not quarreling with the judge picked his evidence over ours. We're saying his evidence doesn't show anything. Okay, fine, they leak. And he says the water leaks around the rim. Okay, what does that have to do with whether or not it seals upon detachment? That's key, upon detachment. Very briefly, on my glue example, that is sealing under that hypothetical. We don't have glue, by the way, but hypothetically. But is it sealing upon detachment? No, it's not doing a thing upon detachment. It's sealing the plug to the balloon, and then when it drops off, the valve closes, and you're good to go. I mean, a similar example would be what if you had a problem with the thinness of the rubber in the neck, and so therefore you were getting tears and you were getting water all over the place, and you fix it because you make the neck sturdier and you add more material. Well, does that mean? Mr. Underhill, we admire your mutual fortitude. And we'll take this case under review. Thank you, Judge Lurie. Thank you.